IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| REYNOLDS ALLEY, | ) | Case No. 3:17-cv-3 |
|---|---|---|
| | ) | |
| Plaintiff, | ) | JUDGE KIM R. GIBSON |
| | ) | |
| v. | ) | |
| | ) | |
| MTD PRODUCTS, INC., *et. al.*, | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

### I.    Introduction

Pending before the Court is the Motion for Summary Judgment ("Motion") filed by

Defendants MTD Products, Inc., MTD Products Limited, MTD LLC, MTD Holdings, Inc., and

MTD Consumer Group, Inc. (together "MTD") (ECF No. 26.) The Motion has been fully briefed

(*see* ECF Nos. 27, 35, 37) and is ripe for disposition. For the reasons stated below, the Court will

**DENY** MTD's Motion.

### II.    Jurisdiction

The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332. The Court observes

that Plaintiff omitted from his Amended Complaint any assertion that venue is proper before this

Court. (*See* ECF No. 11.) However, MTD waived its defense of improper venue by failing to

include it in its responsive pleading. (ECF No. 12.) *See* Fed. R. Civ. P. 12(h)(1)(B). Accordingly,

venue is proper.

### III. Background

The case arises from injuries that Plaintiff sustained while handling a snow thrower manufactured by MTD. (ECF No. 11 at 2.) Plaintiff alleges that, on or about January 19, 2015, when he was seating the bead of a tire onto the snow thrower rim and/or inflating the tire, the rim failed and burst, causing Plaintiff to suffer severe injuries. (*Id.* at 2-3.)

The Court accepts as true the facts in the following two paragraphs for the sole purpose of deciding the instant Motion for Summary Judgment:

1. Plaintiff is a Pennsylvania resident. (ECF No. 33 at ¶ 1.) Plaintiff purchased the snow thrower in Pennsylvania (*Id.* at ¶ 6) and only ever used it in Pennsylvania. (*Id.* at ¶ 7.) Plaintiff's injury occurred in Pennsylvania. (*Id* at ¶ 8.)

2. MTD has manufacturing, warehouse, and distribution facilities in four states and several foreign countries. (ECF No. 28 at ¶ 13.) MTD is incorporated in Delaware and has its principal place of business in Ohio. (*Id.* at ¶ 5.) The snow thrower that injured Plaintiff was engineered, designed, manufactured, and tested by Defendant MTD in its Valley City, Ohio plant. (*Id.* at ¶¶ 6-11.) MTD produced the snow thrower in question on September 8, 2004, and shortly thereafter sold it to Lowe's, a national retailer, FOB MTD's manufacturing facility in Ontario, Canada. (*Id.* at ¶ 12.) Upon receiving the snow thrower, Lowe's shipped it to its distribution center located in Minersville, Pennsylvania, in September 2004. (*Id.*)

Plaintiff filed his Complaint before this Court on January 10, 2017. (ECF No. 1.) Plaintiff subsequently amended his Complaint on February 2, 2017. (ECF No. 11.) Plaintiff asserts two claims against MTD: (1) strict products liability (Count I) and (2) negligence (Count II). (*Id.* at 3-8.) MTD filed the instant Motion for Summary Judgment on April 4, 2017. (ECF No. 26.)

MTD asserts that Pennsylvania's choice of law rules mandate that Ohio law be applied in this case. (ECF No. 27 at 2.) Under § 2305.10(C)(1) of Ohio's Revised Code, Ohio's statute of repose bars a products liability claim brought more than ten years after the product was delivered to its first purchaser, subject to exceptions that do not apply here.[1] MTD contends that Plaintiff's claims are barred by Ohio's statue of repose because Plaintiff brought his claims in 2017, more than ten years after MTD delivered to snow thrower to Lowe's. (*Id.*)

Plaintiff contends that Pennsylvania's choice of law rules require that the Court apply Pennsylvania law. (ECF No. 32 at ¶ 3; ECF No. 35.) Both parties agree that Pennsylvania law does not contain a statute of repose that would prevent Plaintiff from asserting his claims against MTD. (ECF No. 33 at 13-14; ECF No. 27 at 5.) Plaintiff asserts that this Court should deny MTD's Motion for Summary Judgment because Plaintiff's claims are not barred under Pennsylvania law. (ECF No. 35 at 6-19.) Alternatively, Plaintiff asks this Court to preclude MTD from arguing that Ohio law applies under the doctrine of judicial estoppel; Plaintiff avers that in similar litigation MTD previously took the inconsistent position that the law of other states should apply rather than the law of Ohio. (*Id.* at 19-23.)

## IV. Legal Standard

"Summary judgment is appropriate only where . . . there is no genuine issue as to any material fact . . . and the moving party is entitled to judgment as a matter of law." *Melrose, Inc. v.*

---

[1] The relevant section of the Ohio Revised Code reads, "no cause of action based on a product liability claim shall accrue against the manufacturer or supplier of a product later than ten years from the date that the product was delivered to its first purchaser or first lessee who was not engaged in a business in which the product was used as a component in the production, construction, creation, assembly, or rebuilding of another product." § 2305.10.

*Pittsburgh*, 613 F.3d 380, 387 (3d Cir. 2010) (*quoting Ruehl v. Viacom, Inc.*, 500 F.3d 375, 380 n. 6 (3d Cir. 2007)); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); Fed. R. Civ. P. 56(a). Issues of fact are genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see also McGreevy v. Stroup*, 413 F.3d 359, 363 (3d Cir. 2005). Material facts are those that will affect the outcome of the trial under governing law. *Anderson*, 477 U.S. at 248. The Court's role is "not to weigh the evidence or to determine the truth of the matter, but only to determine whether the evidence of record is such that a reasonable jury could return a verdict for the nonmoving party." *Am. Eagle Outfitters v. Lyle & Scott Ltd.*, 584 F.3d 575, 581 (3d Cir. 2009). "In making this determination, 'a court must view the facts in the light most favorable to the nonmoving party and draw all inferences in that party's favor.'" *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 278 (3d Cir.2000) (quoting *Armbruster v. Unisys Corp.*, 32 F.3d 768, 777 (3d Cir. 1994).

The moving party bears the initial responsibility of stating the basis for its motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. If the moving party meets this burden, the party opposing summary judgment "may not rest upon the mere allegations or denials" of the pleading, but "must set forth specific facts showing that there is a genuine issue for trial." *Saldana v. Kmart Corp.*, 260 F.3d 228, 232 (3d Cir. 2001) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 n. 11, (1986)). "For an issue to be genuine, the nonmovant needs to supply more than a scintilla of evidence in support of its position—there must be sufficient evidence (not mere allegations) for a reasonable jury to find for the nonmovant." *Coolspring Stone Supply v. Am. States Life Ins. Co.*, 10 F.3d 144, 148 (3d Cir.1993); *see also Podobnik v. U.S. Postal Serv.*, 409 F.3d 584, 594

4

(3d Cir. 2005) (noting that a party opposing summary judgment "must present more than just bare assertions, conclusory allegations or suspicions to show the existence of a genuine issue.") (internal quotation marks omitted).

## V.    Discussion

### A.    Pennsylvania's Choice of Law Rules Apply

"[T]he choice of law rules of the forum state, Pennsylvania, apply when a federal court is sitting in diversity." *Specialty Surfaces Int'l, Inc. v. Cont'l Cas. Co.*, 609 F.3d 223, 229 (3d Cir. 2010) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941)).

This Court sits in diversity in the Commonwealth of Pennsylvania. Therefore, Pennsylvania's choice of law rules apply.

### B.    A Conflict Exists Between Pennsylvania Law and Ohio Law

"[T]he first step in a choice of law analysis under Pennsylvania law is to determine whether a conflict exists between the laws of the competing states." *Auto–Owners Ins. Co. v. Stevens & Ricci Inc.*, 835 F.3d 388, 404 (3d Cir. 2016) (quoting *Budtel Assocs., LP v. Cont'l Cas. Co.*, 915 A.2d 640, 644 (Pa. Super. Ct. 2006)). "'If [the] two jurisdictions' laws are the same, then there is no *conflict* at all, and a choice of law analysis is unnecessary.'" *Pac. Employers Ins. Co. v. Glob. Reinsurance Corp. of Am.*, 693 F.3d 417, 432 (3d Cir. 2012) (quoting *Hammersmith v. TIG Ins. Co.*, 480 F.3d 220, 230 (3d Cir. 2007)). "If there are no relevant differences between the laws of the two states, the court need not engage in further choice-of-law analysis, and may instead refer to the states' laws interchangeably." *Auto–Owners Ins. Co.*, 835 F.3d at 404.

To the best knowledge of this Court and the parties, Pennsylvania law does not provide for a statute of repose in product liability actions. (*See* ECF No. 33 at 13-14; ECF No. 27 at 5.) By

5

contrast, Ohio recognizes a ten-year statute of repose in products liability cases. Ohio Rev. Code § 2305.10(C)(1). Therefore, a conflict exists between the laws of the two jurisdictions.

## C. The Conflict Between Pennsylvania and Ohio is a "True" Conflict

"In the case that a conflict does exist, the court proceeds to the second step of the analysis: characterizing the conflict as 'true,' 'false,' or 'unprovided for.'" *Stanford v. Nat'l Grange Mut. Ins. Co.*, No. CV 11-7144, 2014 WL 12607743, at *1 (E.D. Pa. Feb. 28, 2014) (citing *Hammersmith*, 480 F.3d at 230).

"A 'true' conflict exists where both states have an interest in applying their own law." *Atl. Pier Assocs., LLC v. Boardakan Rest. Partners*, 647 F. Supp. 2d 474, 487 (E.D. Pa. 2009) (citing *Hammersmith*, 480 F.3d at 229). If a "true" conflict exists, the Court must determine "which state has the greater interest in the application of its law" and must apply that state's law. *Cipolla v. Shaposka*, 439 Pa. 563, 566 (1970).

A "false" conflict exists "'[i]f only one jurisdiction's governmental interests would be impaired by the application of the other jurisdiction's law . . . '". *Wolfe v. McNeil-PPC, Inc.*, 703 F. Supp. 2d 487, 492 (E.D. Pa. 2010) (quoting *Lacey v. Cessna Aircraft Co.*, 932 F.2d 170, 187 (3d Cir. 1991)). When confronted with a "false" conflict, "the court must apply the law of the state whose interests would be harmed if its law were not applied." *Lacey*, 932 F.2d at 187.

"The situation is 'unprovided for' when neither state has an interest in applying its own law." *Atl. Pier Assocs.*, 647 F. Supp. 2d at 487 (citing *Hammersmith*, 480 F.3d at 229). When confronted with an "unprovided for" situation, the Court must apply *lex loci delicti* (the law of the place of the wrong). *Budget Rent-A-Car Sys., Inc. v. Chappell*, 407 F.3d 166, 170 (3d Cir. 2005).

6

A true conflict exists here. Pennsylvania clearly has an interest in providing redress for Pennsylvania citizens injured by products they purchased and used within Pennsylvania. The fact that Pennsylvania has not adopted a statute of repose indicates that the Pennsylvania legislature believes that the interest in indefinitely protecting consumers from faulty products outweighs the interest in insulating manufacturers from lawsuits brought long after they produced the injurious product. Similarly, Ohio has a strong interest in protecting Ohio manufacturers from product liability lawsuits brought more than ten years after the injurious product was first sold as evidenced by the ten-year statute of repose codified in Ohio Rev. Code § 2305.10(C)(1). Because both jurisdictions have an interest in their laws being applied to the instant dispute, this is neither a "false" conflict nor an "unprovided for" situation, but rather a "true" conflict.

The Court rejects Plaintiff's assertion that this case represents a "false" conflict because Ohio does not have an interest in its law being applied in this case. (ECF No. 35 at 11-14.) Plaintiff argues that Ohio enacted its statute of repose out of a concern that evidence and witnesses would be difficult to locate more than ten years after a product was initially sold. (*Id.* at 13.) Plaintiff states that Ohio does not have an interest in its statute of repose being applied here because evidence and witnesses are abundant in this case as MTD has been sued numerous times in the last decade by other consumers injured by the same model of snow thrower that injured Plaintiff. (*Id.*) While Plaintiff's weak argument does not merit detailed discussion, the Court merely notes that Plaintiff underappreciated Ohio's interest in this case because he failed to recognize the many

7

rationales beyond the unavailability of evidence and witnesses that motivated Ohio to enact its

statute of repose.[2]

---

[2] By enacting Ohio Rev. Code § 2305.10(C)(1), the Ohio General Assembly intended to accomplish all of the following:

> (1) To declare that the ten-year statute of repose prescribed by division (D)(2) of section 2125.02 and division (C) of section 2305.10 of the Revised Code, as enacted by this act, are specific provisions intended to promote a greater interest than the interest underlying the general four-year statute of limitations prescribed by section 2305.09 of the Revised Code, the general two-year statutes of limitations prescribed by sections 2125.02 and 2305.10 of the Revised Code, and other general statutes of limitations prescribed by the Revised Code; (2) To declare that, subject to the two-year exceptions prescribed in division (D)(2)(d) of section 2125.02 and in division (C)(4) of section 2305.10 of the Revised Code, the ten-year statutes of repose shall serve as a limitation upon the commencement of a civil action in accordance with an otherwise applicable statute of limitations prescribed by the Revised Code; (3) To recognize that subsequent to the delivery of a product, the manufacturer or supplier lacks control over the product, over the uses made of the product, and over the conditions under which the product is used; (4) To recognize that under the circumstances described in division (C)(3) of this section, it is more appropriate for the party or parties who have had control Legislative Service Commission -60- Am. Sub. S.B. 80 over the product during the intervening time period to be responsible for any harm caused by the product; (5) To recognize that, more than ten years after a product has been delivered, it is very difficult for a manufacturer or supplier to locate reliable evidence and witnesses regarding the design, production, or marketing of the product, thus severely disadvantaging manufacturers or suppliers in their efforts to defend actions based on a product liability claim; (6) To recognize the inappropriateness of applying current legal and technological standards to products manufactured many years prior to the commencement of an action based on a product liability claim; (7) To recognize that a statute of repose for product liability claims would enhance the competitiveness of Ohio manufacturers by reducing their exposure to disruptive and protracted liability with respect to products long out of their control, by increasing finality in commercial transactions, and by allowing manufacturers to conduct their affairs with increased certainty; (8) To declare that division (D)(2) of section 2125.02 and division (C) of section 2305.10 of the Revised Code, as enacted by this act, strike a rational balance between the rights of prospective claimants and the rights of product manufacturers and suppliers and to declare that the ten-year statutes of repose prescribed in those sections are rational periods of repose intended to preclude the problems of stale litigation but not to affect civil actions against those in actual control and possession of a product at the time that the product causes an injury to real or personal property, bodily injury, or wrongful death . . .
> .

2004 Ohio Laws File 144 (S.B. 80) (Am Sub. S.B. 80), Section 3.

### D. Pennsylvania's Interest in the Application of Its Law Outweighs Ohio's Interest in the Application of Its Law

As noted above, "[i]f a true conflict exists, the Court must then determine which state has the 'greater interest in the application of its law.'" *Harris v. Kellogg, Brown & Root Servs., Inc.,* 151 F. Supp. 3d 600, 611 (W.D. Pa. 2015) (quoting *Cipolla v. Shaposka,* 439 Pa. 563, 267 A.2d 854, 856 (1970)). "To do so, courts in Pennsylvania apply a hybrid contacts/interest analysis." *Rose,* 2017 WL 3008747, at *3 (citing *Taylor v. Mooney Aircraft Corp.,* 430 F.Supp.2d 417, 421 (E.D. Pa. 2006)). The hybrid approach is "a combination of the 'approaches of both [the] Restatement II (contacts establishing significant relationships) and [the] 'interests analysis' (qualitative appraisal of the relevant States' policies with respect to the controversy"). *Hammersmith,* 480 F.3d at 231 (quoting *Melville v. Am. Home Assur. Co.,* 584 F.2d 1306, 1311 (3d Cir. 1978)). "This analysis requires more than a 'mere counting of contacts'" and requires that the Court "weigh the contacts on a qualitative scale according to their relation to the policies and interests underlying the [particular] issue." *Atl. Pier Assocs.,* 647 F. Supp. 2d at 487 (citing *Hammersmith,* 480 F.3d at 231) (internal citations omitted).

The Restatement (Second) of Conflict of Laws ("Restatement") governs the "significant relationships" inquiry. In personal injury cases sounding in negligence and strict liability,

> the local law of the state where the injury occurred determines the rights and liabilities of the parties, unless, with respect to the particular issue, some other state has a more significant relationship under the principles stated in § 6 to the occurrence and the parties, in which event the local law of the other state will be applied.

Restatement (Second) of Conflict of Laws § 146 (1971). Under § 6 of the Restatement, the factors relevant to the choice of the applicable rule of law include:

9

(a) the needs of the interstate and international systems,
(b) the relevant policies of the forum,
(c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,
(d) the protection of justified expectations,
(e) the basic policies underlying the particular field of law,
(f) certainty, predictability and uniformity of result, and
(g) ease in the determination and application of the law to be applied.

*Id.* at § 6. When evaluating the principles provided by § 6, the Court must take into account the following contacts:

(a) the place where the injury occurred,
(b) the place where the conduct causing the injury occurred,
(c) the domicil, residence, nationality, place of incorporation and place of business of the parties, and
(d) the place where the relationship, if any, between the parties is centered.

These contacts are to be evaluated according to their relative importance with respect to the particular issue.

*Id.* at § 145.

In addition to classifying the relevant contacts to determine which jurisdiction has a more significant relationship, the Court also engages in an "interests analysis;" the Court "must consider the 'interests and policies' that may be validly asserted by each jurisdiction." *Hammermill,* 480 F.3d at 235 (quoting *Melville,* 584 F.2d at 1311).

1. **Pennsylvania's Relationship to This Case is Greater Than That of Ohio Because Pennsylvania Has Stronger Contacts**

An examination of the relevant Restatement factors indicates that Pennsylvania's relationship to this case is more significant than that of Ohio. Because the Restatement advises that the contacts listed in § 145 inform the "significant relationship" analysis under § 6, the Court will begin by evaluating each jurisdiction's contacts under § 145. This analysis reveals that Pennsylvania's contacts are qualitatively more significant and meaningful than those of Ohio.

### a. Pennsylvania's Relevant Contacts Are Stronger than Ohio's Relevant Contacts (§ 145 Analysis)

   *i.      § 145 (a): The Injury Occurred in Pennsylvania*

It is undisputed that Plaintiff was injured in Pennsylvania. (ECF No. 33 at ¶ 8.) Therefore, § 145(a) weighs in favor of applying Pennsylvania law.

   *ii.      § 145 (b): The Conduct Causing the Injury Occurred in Ohio*

MTD has presented evidence that the snow thrower wheel that injured Plaintiff was manufactured in Ohio by a MTD subsidiary. (ECF No. 28 at ¶ 9; ECF No. 28-1 at ¶ 8.) Plaintiff has not come forward with any evidence to dispute MTD's claim. Therefore, § 145(b) weighs in favor of applying Ohio law.

   *iii.      § 145 (c): The Plaintiff's Domestic Relationship with Pennsylvania is Stronger than MTD's Business Relationship with Ohio*

Plaintiff has robust connections to Pennsylvania. Plaintiff is a Pennsylvania resident. (ECF No. 33 at ¶ 1.) Plaintiff purchased the snow thrower in Pennsylvania (*id.* at ¶ 6), only ever used it in Pennsylvania (*id.* at ¶ 7), and sustained his injury in Pennsylvania. (*Id* at ¶ 8.) It is hard to imagine how Plaintiff's relationship to Pennsylvania could be stronger.

MTD's relationship to Ohio is less substantial. While MTD maintains its principal place of business in Ohio (ECF No. 28 at ¶ 5) and has manufacturing, warehouse, and distribution facilities in Ohio (ECF No. 18-1 at ¶ 4), MTD is incorporated in Delaware (*id.* at ¶ 3), and has manufacturing, warehouse, and distribution facilities in three other states (Kentucky, Tennessee, and Mississippi), Mexico, and an unspecified number of "overseas" countries. (*Id.* at ¶ 4.) When considered in the broader context of MTD's contacts with other jurisdictions inside and outside of the United States, MTD's contacts with Ohio are diluted.

The Court concludes that Plaintiff's domestic contacts with Pennsylvania are qualitatively more substantial than MTD's business contacts with Ohio. *Hammersmith*, 480 F.3d at 231. Accordingly, § 145(c) weighs in favor of applying Pennsylvania law.

      *iv.*      *§ 145(d): The Parties' Relationship is Centered in Pennsylvania*

The parties do not have a strong relationship. While tenuous, this relationship is centered in Pennsylvania. The Court rejects MTD's assertion that the parties have no relationship whatsoever.[3] (*See* ECF No. 27 at 17.) The Court further rejects MTD's alternative assertion that the parties' relationship is centered in Ohio rather than Pennsylvania. The only case that MTD cites to support this argument is inapposite, as in that case the plaintiff, who sued a Nebraska manufacturer in Pennsylvania, "was a citizen and resident of Illinois at the time the complaint was filed in federal court." *Jones v. SEPTA*, 1993 U.S. Dist. LEXIS 5698, *19 (ED. Pa. 1993). Here, Plaintiff is a resident of Pennsylvania and has stronger contacts with Pennsylvania than the plaintiff in *SEPTA*.

Because the parties' tenuous relationship is centered in Pennsylvania, § 145(d) weighs slightly towards an application of Pennsylvania law.

      *v.*      *The Qualitative "Contacts" Analysis Under § 145(a)-(d) Weighs Towards Applying Pennsylvania Law*

Based on the Court's analysis of Pennsylvania and Ohio's contacts under § 145(a)-(d), the Court finds that Pennsylvania's contacts are qualitatively more significant than Ohio's contacts. Accordingly, the § 145(a)-(d) "contacts" analysis weighs in favor of applying Pennsylvania law.

---

[3] Plaintiff sustained injuries while using MTD's product. Thus, the parties have a relationship.

Having taken into account the "contacts" listed in § 145(a)-(d), the Court must now determine which state's relationship to the case is more significant under § 6.

## b. Pennsylvania's Relationship to this Case is More Significant than Ohio's Relationship to this Case (§ 6 Analysis)

The Court notes that three of the seven factors provided by § 6 do not appear relevant in determining which law to apply given the facts of this case.[4] Because these three factors do not weigh towards applying either Pennsylvania or Ohio law, the Court will not discuss these factors and will instead analyze the criteria that appear most relevant in resolving choice of law question facing the Court.

### i.  § 6(b): The Relevant Policies of the Forum (Pennsylvania) Favor Applying Pennsylvania Law

"The court should give a local statute the range of application intended by the legislature when these intentions can be ascertained and can constitutionally be given effect." Restatement (Second) of Conflict of Laws § 6 cmt. b. The Pennsylvania legislature has chosen to enact statutes of repose in other contexts,[5] but has not enacted a statute of repose for products liability claims. Accordingly, this Court infers that the Pennsylvania legislature intends for its citizens to be have recourse when they suffer injuries caused by defective products manufactured and sold more than ten years before the injury. Therefore, § 6 (b) weighs towards applying Pennsylvania law.

---

[4] The Court finds § 6 (a) ("the needs of the interstate and international systems"), §6 (e) ("the basic policies underlying the particular field of law"), and §6 (f) ("certainty, predictability and uniformity of result") to be unhelpful in resolving the choice of law question now before the Court.

[5] *See, e.g.*, 42 Pa. Stat. and Cons. Stat. Ann. § 5536 (providing a 12-year statute of repose for claims alleging deficient improvements to real property).

13

*ii.*     *§ 6(c): The Relevant Policies and Interests of Ohio Weigh Towards Applying Ohio Law*

Ohio has a strong interest in Ohio law being applied in this case. As explained in fn. 2, *supra*, the Ohio legislature enacted the ten-year statute of repose in products liability actions to further several important government interests. 2004 Ohio Laws File 144 (S.B. 80) (Am Sub. S.B. 80), Section 3. For instance, one of the reasons that the Ohio General Assembly enacted the ten-year state of repose was "[t]o recognize that a statute of repose for product liability claims would enhance the competitiveness of Ohio manufacturers by reducing their exposure to disruptive and protracted liability with respect to products long out of their control . . . ". *Id.* If Plaintiff were able to maintain his suit against MTD, it would subject MTD to the precise "protracted liability" for a product "long out of [its] control" that the General Assembly aimed to guard against by enacting the statute of repose. Therefore, § 6 (c) weighs towards applying Ohio law.

*iii.*     *§ 6(d): Applying Pennsylvania Law Would Protect Justified Expectations*

Plaintiff, a Pennsylvania resident, purchased the snow thrower in Pennsylvania, only ever used the snow thrower in Pennsylvania, and was injured by the snow thrower in Pennsylvania. (ECF No. 33 at ¶¶ 6-8.) Therefore, the Court finds that Plaintiff had a justified expectation that Pennsylvania law would apply to any claims arising from injuries he sustained while using the snow thrower.

By contrast, the Court finds that MTD did not have a justified expectation that Ohio's statute of repose would apply to this action. MTD has manufacturing, warehouse, and distribution facilities in four states and several foreign countries. (ECF No. 28 at ¶ 13.) Moreover, it is undisputed that MTD sold the snow thrower that injured Plaintiff to Lowe's (ECF No. 36 at ¶ 2), a national retailer that, at the time MTD sold it the snow thrower, had stores in 45 states.

(ECF No. 34-8 at 4.) While MTD has its principal place of business in Ohio, and while MTD designed, engineered, and manufactured the snow thrower in Ohio, MTD could not reasonably expect that the product liability law of Ohio would apply whenever a consumer was injured using one of its snow throwers that the consumer bought from a national retailer such as Lowe's.

The Court also notes that MTD's "Manufacturer's Limited Warranty" states that consumers "may also have other rights which vary from state to state." (EFC No. 44-10). In other words, MTD actually acknowledges that other state's laws may pertain to actions brought by consumers of its products. Accordingly, the Court finds that MTD does not have a justified expectation that Ohio's law would apply here.

Accordingly, the Court finds that § 6(d) weighs towards applying Pennsylvania law.

*iv.    § 6(e): Ease in the Determination and the Application of the Law to Be Applied Weighs in Favor of Applying of Pennsylvania Law*

"Ideally, choice-of-law rules should be simple and easy to apply." Restatement (Second) of Conflict of Laws § 6 cmt. j. As stated above, Plaintiff purchased the snow thrower in Pennsylvania, only ever used it in Pennsylvania, and was injured using it in Pennsylvania. (ECF No. 33 at ¶¶ 6-8.) A simple rule for determining choice of law questions would be that when a product is purchased and used within a single state, that state's law applies to a products liability claim alleging that the product was defective. Moreover, while this Court is extremely familiar with Pennsylvania state law, it has much less exposure to, and knowledge of, Ohio state law. Therefore, § 6(e) favors applying Pennsylvania law.

v.       *The "Significant Relationship" Analysis Under § 6 Favors Applying Pennsylvania Law*

In conclusion, this Court finds that Pennsylvania's relationship to the issues and parties is more significant than Ohio's relationship. Therefore, the "significant relationship" component of Pennsylvania's hybrid analysis strongly favors applying Pennsylvania law

vi.       *The Cases MTD Relies on Are Inapposite*

The Court further notes that the cases that MTD cites to support its claim that Ohio has a more significant relationship are inapposite.[6]

The Court rejects MTD's analogy to *Kuchinic v. McCrory*, 422 Pa. 620, 624 (1966). In *Kuchinic*, three passengers were killed while traveling from Miami to Pittsburgh when their plane crashed in Georgia. *Id.* at 621-22. The Supreme Court of Pennsylvania overturned the trial court's application of Georgia law, *id.* at 623, reasoning that Georgia's only relationship to the case was "wholly fortuitous." *Id.* at 624. MTD's reliance on *Kuchinic* is misplaced. MTD purposefully sold its snow throwers to a national retailer with locations in 45 states. (ECF No. 34-8 at 4.) While MTD may not have known that the *specific* snow thrower that injured Plaintiff would be sold in Pennsylvania, MTD surely was aware that Lowe's would sell MTD's snow throwers in numerous locations throughout the United States, most likely including Pennsylvania. Therefore, unlike in *Kuchinic*, the place of the injury is not "wholly fortuitous." Further, the plaintiffs in *Kuchinic* were not Georgia residents, and thus Georgia had little interest in applying Georgia law. By contrast, Plaintiff is a Pennsylvania resident, and Pennsylvania has an interest in protecting its consumers

---

[6] As noted above, *SEPTA*, 1993 U.S. Dist. LEXIS 5698 is inapplicable because the plaintiff in that case was not a Pennsylvania resident and thus had weaker contacts to Pennsylvania than our Plaintiff, who is a Pennsylvania resident. *Id.* at 19.

16

from defective products produced by out-of-state manufacturers. Therefore, *Kuchinic* does not apply here.

MTD's analogy to *Donovan v. Idant Labs.*, 625 F. Supp. 2d 256 (E.D. Pa. 2009) also fails to persuade the Court. In *Donovan*, the plaintiff, a Pennsylvania resident, sued the defendant, a New-York sperm bank, after the sperm bank implanted her with defective sperm causing her daughter to suffer severe birth defects. *Id.* at 262. The district court concluded that New York law applied to the plaintiff's tort claims, even though the "injury and the harm" took place in Pennsylvania. *Id.* at 269-71. However, *Donovan* is inapposite. In *Donovan*, the plaintiff traveled to the defendant's New York office for her screening and testing. *Donovan*, 625 F. Supp. 2d at 271. The district court relied on this fact in concluding that New York tort law applied. *Id.* By contrast, Plaintiff never had any contacts with MTD in Ohio. Therefore, *Donovan* is not analogous to this case.

The Court notes that *DeGrasse v. Sensenich Corp.*, No. CIV.A. 88-1490, 1989 WL 23775 (E.D. Pa. Mar. 15, 1989) is also inapposite. In *DeGrasse*, members of an Arkansas family were injured in a plane crash in Alabama due to a defective propeller manufactured by a Pennsylvania corporation.[7] *Id.* at 1. The plaintiffs asked for Pennsylvania tort law to be applied because Arkansas law was more favorable to manufacturers. *Id.* at 3. The district court agreed with the plaintiffs and applied Pennsylvania law. *Id.* at 3. Central to the district court's holding was its observation that, by enacting a strict products liability regime, the Arkansas legislature manifested a "policy of ensuring that those injured by defective, unreasonably dangerous products can recover against suppliers of such products . . . ". *DeGrasse*, 1989 WL 23775, at *3. The

---

[7] Neither party argued that Alabama law should be applied. *DeGrasse*, 1989 WL 23775, at 1.

court explained that Arkansas' pro-plaintiff strict-liability "policy would *not* be furthered by the application of the more plaintiff-restrictive law of Arkansas to Arkansas plaintiffs in favor of non-Arkansas defendants." *Id.* (emphasis added.) In other words, the district court applied Pennsylvania law because it advanced the plaintiff's home state's (Arkansas') interest in ensuring that its citizens were able to recover in tort. Thus, *DeGrasse* actually *supports* Plaintiff's argument that Pennsylvania law should apply; in *DeGrasse* the district court applied Pennsylvania products liability law because doing so would give effect to the plaintiffs' home state's (i.e. Arkansas') pro-plaintiff strict liability policy. By the same logic, this Court should apply Pennsylvania's law to give effect to Plaintiff's home state's (Pennsylvania's) policy of protecting its consumers from defective products through its strict liability regime.

Finally, the Court declines to follow *Kelly v. Ford Motor Co.*, 933 F. Supp. 465 (E.D. Pa. 1996). In *Kelly*, the plaintiff sued a Michigan automobile manufacturer for punitive damages after the plaintiff was involved in a car accident in Pennsylvania. *Id.* at 467. The district court held that Michigan law on punitive damages applied, relying on language from the Restatement that "[i]f the primary purpose of the tort rule involved is to deter or punish misconduct . . . the state where the conduct took place *may* be the state of dominant interest and thus that of most significant relationship." *Id.* at 169 (quoting Restatement (Second) of Conflict of Laws § 145 cmt. c) (emphasis added). However, the same Restatement comment that *Kelly* quoted states that the location where the punitive conduct occurred "must not be over-emphasized" in the choice of law analysis. Restatement (Second) of Conflict of Laws § 145 cmt. c. Moreover, as the Eastern District of Pennsylvania recently stated, "*Kelly* appears more often distinguished than followed." *In re Tylenol (Acetaminophen) Mktg., Sales Practices & Prod. Liab. Litig.*, No. 2:12-CV-07263, 2015 WL

2417411, at *6 (E.D. Pa. May 20, 2015) (internal citations omitted). Furthermore, *Kelly* is a twenty-one-year-old district court case that is non-binding on this Court.

The Court notes that a strict adherence to *Kelly* would create perverse incentives. If courts sitting in diversity reflexively applied the law of the state where products were produced, manufacturers would be incentivized to forum-shop and re-locate to the state with the shortest statute of repose. This would insulate manufacturers from liability and thus remove some of the incentive for them to produce safe and non-defective products. Moreover, this paradigm would subvert the efforts of states such as Pennsylvania, which have chosen not to enact statutes of repose because they have determined that the benefits of protecting their citizens from defective products outweigh the costs of expanding liability for producers. Accordingly, this Court respectfully declines to follow *Kelly*.

### 2. Interests Analysis: Pennsylvania and Ohio Have an Equally Strong Interest in Their Respective Laws Being Applied in This Case

This Court is ill-equipped to evaluate the relative merits of legislative action. Both the Pennsylvania and the Ohio legislatures have compelling reasons for the strict liability paradigms that they have adopted.[8] Thus, the Court finds that Pennsylvania and Ohio have an equally strong interest in having their respective laws applied in this case. Therefore, the "interests" component of the "substantial relationship" analysis does not weigh towards applying Pennsylvania or Ohio law.

---

[8] As noted above, the fact that Pennsylvania's legislature has not enacted a statute of repose in product liability actions evidences its desire to prioritize consumer protection over protecting manufacturers from litigation. Similarly, the Ohio General Assembly articulated at least eight compelling reasons for enacting a ten-year statute of repose in product liability cases. *See* 2004 Ohio Laws File 144 (S.B. 80) (Am Sub. S.B. 80), Section 3. (explaining reasons for enacting division (C) of section 2305.10 of the Ohio Revised Code); *see also Groch v. Gen. Motors Corp.*, 117 Ohio St. 3d 192, 221 (Ohio 2008) (same).

### 3. Choice of Law Conclusion: The Court Will Apply Pennsylvania Law Because Pennsylvania Has a Greater Overall Interest in this Case

In conclusion, the Court finds that (1) the "substantial relationship" and "contacts" analysis favors applying Pennsylvania law, and (2) the "interests" analysis is neutral between Pennsylvania law and Ohio law. Therefore, the Court finds that Pennsylvania has a greater relationship to this case and a greater overall interest in its law being applied. Accordingly, the Court will apply Pennsylvania law.

## VI.    Conclusion

The Court will apply Pennsylvania law because Pennsylvania has a greater overall interest in this case. Accordingly, Plaintiff's claims against MTD are not barred by Ohio's statute of repose.[9] Therefore, this Court will **DENY** MTD's Motion for Summary Judgment. An appropriate order follows.

---

[9] The Court need not reach Plaintiff's alternative argument that MTD should be judicially estopped from arguing that Ohio law should apply.

20

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **REYNOLDS ALLEY,** | ) | **Case No. 3:17-cv-3** |
| | ) | |
| **Plaintiff,** | ) | **JUDGE KIM R. GIBSON** |
| | ) | |
| **v.** | ) | |
| | ) | |
| **MTD PRODUCTS, INC.,** *et. al.,* | ) | |
| | ) | |
| | ) | |
| **Defendants.** | ) | |

## ORDER

AND NOW, this $\underline{20}$th day of December, 2017, upon consideration of MTD's Motion for

Summary Judgment (ECF No. 26), and in accordance with the attached memorandum opinion,

**IT IS HEREBY ORDERED** that the motion is **DENIED.**

BY THE COURT:

_____

**KIM R. GIBSON**
**UNITED STATES DISTRICT JUDGE**